Could you call the third and last page? The lawyers who are going to argue Trelawne Turner, step forward and speak your names for the record. Good afternoon. Brian Josias on behalf of Nina Kelley, defendant of Trelawne Turner. All right. You all know this because you're here all the time. This microphone does not record. It simply, I mean it records, it doesn't amplify. So keep your voices up. You each have 20 minutes. You do not need to take the whole 20 minutes, but I will ask you as the appellant if you'd like to reserve part of your 20 minutes. Okay. All right. That's all. You may step up and you may have a seat. Oh, I'm sorry. There's one more point, and this does not come out of your time. The state asked to cite an additional case. Do you have an objection? No, Your Honor. All right. I will enter an order later today or tomorrow, but you may discuss that case if you would like to, and you can address it if you want to. Thank you, Your Honor. Good afternoon. Brian L. Josias, assistant appellate defender with the Office of the State Appellate Defender. On behalf of the defendant appellant, Trelawne Turner, may it please the Court and counsel, Mr. Turner's conviction for aggravated battery of Robert Williams should be reversed. The state failed to prove beyond a reasonable doubt that off-duty officer Williams was performing his official duties as a Chicago police officer when Turner battered him, or that Turner knew or could have known that Williams was performing his official duties. The state presented no evidence to suggest, let alone prove, what Williams' official duties were or when he was performing them. As a result, the state did not prove that Mr. Turner committed felony aggravated battery. The evidence in trial showed that Mr. Wilson was an off-duty police officer. His description of his police duties was limited to describing them as patrol within the first district. At the time of the offense, Officer Wilson was moonlighting as a security guard at Henderson Elementary School, a Chicago public school that was not located within the first district. The testimony of trial showed that the school uses both off-duty police and non-police as security guards. Mr. Wilson was wearing a shirt that said police, and his Chicago police star was clipped on his belt. Sometime after school went out for the day, off-duty officer Wilson was standing outside the school in the company of teachers and other school staff when Turner approached him and began conversing with him about his daughter, Arlissa, a student at the school. After a brief conversation, Turner punched Williams and then walked away. Williams did not arrest Mr. Turner, and his shift with the CPD or with the Chicago Police Department did not begin... Off-duty officer Williams was not armed at the time of this offense. Now, turning to the critical question in this case is whether or not off-duty officer Williams was battered in the course of performing his official duties. The case in our position turns on the meaning of official duties. The statute does not define official duties, but it clearly does limit the offense of aggravated battery to situations where a person commits aggravated battery when he or she knows the individual to be a peace officer performing his or her official duties. If the state does not prove this element, then the crime is simple battery. As a result, the language must have a meaning, or it's superfluous. Plainly, the purpose of the statute is to protect officers when they are doing their job, not if they are, as the state appears to concede, on a purely personal errand or some type of lark. The case law is clear in terms of defining how to determine if an officer is performing duties or, in other words, doing their job. To that, we look to Barrett, which is cited in both our briefs and the state's. And that case says that the decisive factor in determining whether the officer was in the execution of his official duties is the nature of the acts he performed. Now, the state filed a motion yesterday to cite supplemental authority. They referred to the Brewer case, which is 2018 LAP 160155. And likewise, the focus there was on the nature of the acts performed. And that case likewise dealt with an off-duty police officer. The state, in its motion, conceded that case is factually distinguishable. Now, it is certainly relevant in terms of the fact that it, again, we would submit, supports our position that the state has to prove that the officer, if they're off-duty, the acts that they're performing are in the performance of their official duty. Now, plainly, in the case of the Brewer case. But isn't that a factual determination for the jury? And was the jury improperly instructed in this case in some ways? I mean, it's a factual determination, isn't it? No, it isn't. It's certainly a factual element that the state is required to prove. They must prove that the officer is in the execution of their official duties. I don't believe there's a pattern of jury instruction or any specific way the jury would have been instructed to define the official duties. They were not given additional instruction to assist in that. Arguably, it may be helpful to provide additional instruction to the jury.  And so, sorry, please. The jury was given instruction on battery, though. They were given instruction on battery and they were instructed to find, excuse me, on aggravated battery that they had defined that the officer was performing his official duties. Yes. And that the defendant knew that. That's correct. So, but I mean, they could have gone for the lesser offense. They chose, based on the facts that they saw, that they found him guilty of the aggravated. That's correct. And at the trial, the focus was largely on whether or not there was, whether or not the officer had the accoutrements of being a police officer and whether or not those were observed. There was very little proof adduced, and that's our position here, that there was, in fact, not insufficient proof of whether or not, what his duties were and whether or not he was performing them. There was an assumption, seemingly, that simply by being a police officer, an off-duty police officer, he was engaged in his official duties and, therefore, the state had proven his case. But there is some case law that says that across the country. There is some case law that says that a police officer is always a police officer. But we would argue those are certainly distinguishable. And also, like I said, their and last week's Brewer decision says that in this type of case, the focus is not on whether they're on-duty or off-duty or what they're wearing or whether they have a gun on them or whether they have handcuffs. The focus is on the nature of the acts that they are performing. So for this court, how do you define the nature of the acts? So we have to look at whether or not the act is, I think, a prototypical or stereotypical policing duty. So, for example, are they engaged in making an arrest? Or, as Brewer says, preventing the commission of a crime? Are they investigating a crime? Yeah, but isn't there testimony that this is an area that has a lot of gangs and they're there protecting children getting out of school? I think that is a testimony that this was a high-crime area and that that's one of the reasons why the school staff, including the security guards, were outside at the time of the dismissal. Interestingly, some of the testimony about this being a high-gang area and the need to supervise came from one of the non-police officer witnesses for the state who was also assigned to dismissal duty, as she put it. So, likewise, supervising. And, again, that person, certainly not a peace officer. And I think the difficulty with if we define official duties too broadly, and this is what the cases teach us, is that if you define official duties too broadly and a police officer is always a police officer or their official duties include some very nebulous or very broad protect and serve, that the statute becomes overbroad and then it will run into constitutional problems or various problems. Going back to Justice Walker's question, how would you define it? How would you suggest we define it? Again, I think that the state has to prove, and that's one of the critical issues here, is that the state needs to prove what those duties are and how they are engaged in them. How would they do that? Let's just pretend you were a state's attorney. So, in this case, if they wanted to prove that the individual was engaged in their official duties, they would need to define what those duties are, and I think a good example of that is we oftentimes see a situation where an officer discusses, what were you doing on October 12, 2017? I was on patrol. I was assigned to the 5th District. I was on a gang suppression mission. Gang suppression mission means that we were looking for known gang members and we were investigating them, or I was executing a search warrant. I was investigating a crime. Those are the types of things that give us information, give the fact finder information, help the state prove beyond a reasonable doubt the element of the official duty. They're engaged in the official duty, the pursuit of the reason why they're doing their job. And here, again, we have someone who is acknowledgedly off-duty and who's doing something that civilians are also doing. And, again, if we interpret the statute excessively broadly and we allow it to encompass all different types of range of activities, you run into a serious problem of vagueness and overbreath where, again, anybody could be engaged in their official duties at all times. And, again, the statute specifically says, it doesn't just say aggravated battery when you batter a police officer. It says you batter a police officer in the performance of their official duty. So that language has to have meaning or else it's superfluous. But isn't the officer helping protect those individuals that aren't police officers doing this work? Wasn't there some testimony that he was protecting the teachers too? There is testimony that he's there to help supervise dismissal. And, again, that is not necessarily an official duty of a police officer. That's maybe his duty as a guard at the school or as a supervisor at the school. But, again, testimony also established that there were non-police officers who had the exact same duties, who were doing the exact same job. And, again, if we focus on the statute being designed to protect police officers engaged in their work to punish individuals to a greater degree if they interfere with the performance of that duty, then we have to say, is what this officer doing a stereotypical police officer policing duty? Is this the type of thing that the statute was designed to protect? And we would submit that not only does that not encompass the types of duties that the officer said he was performing here, but, again, there's a deficiency of the evidence. The state failed to provide enough evidence to prove beyond a reasonable doubt that what this officer was doing was a vaguely described act of supervising dismissal of the students, but that's enough to prove beyond a reasonable doubt that he's engaged in his official duties as a peace officer. And, again, another thing to focus on, there's no need to be a peace officer to perform the types of jobs he's discussing. He admitted that non-police civilians were employed as security guards and that also other non-police members of the faculty were there at dismissal time. Just suggesting to you that limiting it to on-duty or limiting it to things that only a sworn police officer can do strikes me at least as overly narrow. So I guess we're looking for a definition that's broader than that, but, yeah, that's what we're looking for. Because both of those sound like they could eliminate a lot of police officers doing official duties. Right, and, again, I think that that's why it's so important to focus on the quantum of the evidence that was introduced here. I think that we're, and that's one of our primary arguments, is that there's just a lack of evidence for the fact finder, the lawyer, or for the court here to know whether or not this person was performing his official duties when he was battered. We just don't know what those duties were, what the scope of them was, when they started, when they stopped, what's the geographic confines. We just know he's employed by the school, he's there, he's supervising dismissal, there's non-police officers there, and that shifts to the second part of our argument, which is the state not only has to prove that he's performing his official duties, they have to prove that my client knew that he was performing his official duties. And if they're so nebulous in general that anybody can do them, then there's no way, and, again, we've seen that they did not prove here that my client was aware that he was, that Mr. Williams was performing those official duties at the time that he encountered him. Instead, what we have is Williams acting in a way that any civilian could do for his personal gain, and there's no way for my client to know, to have known or know, that that's what was happening when he encountered him. Well, there's testimony he told them, though, what he was doing. So there's conflicting testimony on that point. Definitely. The state's own witnesses say that someone apparently in the crowd shouted, he's police or something along those lines. And, again, that goes back to just because someone has the status of a police officer doesn't necessarily mean they're performing their official duties. It could just as easily be the circumstance where Officer Williams is at the school picking up his own child, and there's an altercation between he and another parent, and someone yells out, hey, he's the police. That doesn't mean he's performing his official duties. He's there picking up his child. Right. But I thought the testimony was that the officer said, I'm the police. I can help you. And, you know, then our standard is the like most favorable to the prosecution, that any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. So this is what was presented to the jury, and this is what they found. And, again, it is correct that the officer did testify, he said, on the police combat. But, again, that goes to, and he not only has to, my client has to not only know that Mr. Williams is a police officer or a peace officer, but that he's engaged in the performance of his official duties. And the testimony here helped establish that Mr. Turner and his family were newcomers to this school, had not previously interacted with Mr. Williams, did not know about his role within the school. So simply saying I'm police doesn't necessarily establish that our client, and, again, not conceding that he was performing his official duties, but even if he was within the performance of his official duties, simply saying I'm police doesn't necessarily prove beyond a reasonable doubt that my client knew that he was police and he was performing his official duties. And, again, sorry, I'm using his language of saying I am police. I'm police. I work here. And, again, if I work here, that overlaps with our previous point that there were other non-police staff members who were standing outside doing the same exact thing that he was doing, that Officer Williams was doing. And so, again, that doesn't establish that he's performing some special duty that's entitled to the protection of the statute. If you want to reserve time, I think you're on the staff. Okay. Thank you very much. I would love to reserve that. If you have any further questions. Okay. Thank you. Good afternoon. Assistant State's Attorney Nina Kelly on behalf of the people of the State of Illinois. May it please the Court. The evidence in this case amply established defendant's skill for aggravated battery of a peace officer. Defendant first asked this Court to construe the aggravated battery of a peace officer statute in a manner that both conflicts with the plain language of the statute and it adds conditions and elements that were not expressed in the statute. He argues that the people need to articulate a specific duty that the language of the statute is unambiguous. A general duty is sufficient and the legislature made no indication otherwise. There is simply no requirement in the statute or in case law, might I add, that the people have to identify the duty at trial with specificity. This is a sufficiency of the evidence argument and the trial in fact found that he was, in fact, performing an official duty and there is no case law to indicate otherwise. The disputed issue in this case has already been settled by the Illinois Appellate Court and in two ways, nonetheless. The argument is essentially two-fold after people beat the blue it came out last week on April 27th. First, when he was maintaining the peace and protecting these children and teachers outside of the school, that was a duty of a police officer. It is well established in Illinois law that official duties are not confined to specific time or place. That is well established. It is also well established that a police officer is considered to be on duty 24 hours a day. The question is not about the employment status at the time, but the nature of the acts. He was protecting and serving. That is the epitome of being a police officer that works for a Chicago Police Department. That is part of his job description. Let's get past that issue then and let's get to the other issues. So whether or not Turner knew that Williams was in the performance of his official duty. So when Turner approached Officer Williams, there was testimony. First of all, that Officer Williams was wearing a police shirt that he got from the police uniform store. It said police on the front and the back. He was wearing a duty belt and his hat was exposed. It had his baton and it had his radio. He was at a school in this outfit and he also knew that he was a figure of authority. The whole reason that Turner came up to Officer Williams was because he knew he took his daughter out of class. He knew he was working there, that he had a position of authority. So he approaches this man in a police outfit with a badge and a baton and a radio. At which point Officer Williams says, I am the police. I work here. To any rational person, you would know that he is a police officer and that he is engaged in official duty. But I think it's also important to establish first that he was, in fact, engaged in an official duty, which is well established in Illinois. In their draw all is controlling here and I think it's really important to really analyze how they analyze the third element of whether or not or what is considered performing an official duty. While in their analysis of the third element, they relied completely on State v. Duvall, thereby adopting it. State v. Duvall was very factually similar to this case. That case had police officers who were wearing police outfits who were patrolling a school to monitor the crowd. They were not arresting anyone. They were not shooting anyone. They were doing the same exact thing that Officer Williams was doing in this case when they were assaulted. That court held that attempting to preserve the peace was an official duty. I think it's, I would like to read a quote actually from the opinion of J.R.R., which is the Illinois case, because it is Illinois precedent. That court found, we find no police officer as school security guard cases in Illinois. However, in State v. Duvall, the Ohio Appellate Court considered a claim that a police officer who was moonlighting as a security guard for a school district at a football game was in performance of his official duties when he was assaulted by the defendants. The Ohio Court concluded that the issue is not whether an officer was on duty or off duty, or being paid by the police employer or by a school system, but whether the officer was engaged in official duties. It is clear to this court that the officer is performing an official duty by patrolling or monitoring the crowd and by attempting to preserve the peace. That was the duty, which is exactly what we have here. So the fact that he was engaged in the duty, and he was wearing his outfit, and he knew he was a figure of authority, and he said, I'm the police, I work here, the defendant knew that he was engaged in official duty. Then we come to the second point. And you referred to that Fourth District case as controlling authority? I'm sorry. No, it was the Illinois Appellate Court that is good precedent for this case because it is so similar. Because we're not controlled by another... I'm sorry, I misspoke. I meant it was good Illinois law. I guess I could ask you the flip question of what I asked opposing counsel. You know, this sounds really broad. What's the limitation on this? Any time a police officer is moonlighting, pretty much you're going to hire a police officer to moonlight because they know how to control a crowd. So are you essentially saying any time a police officer is moonlighting, they're performing official duties? No, I'm not. So what's the limitation? The limitation is what they're doing at the time that they are being attacked. If an officer is moonlighting and he went to the bathroom and was attacked in the bathroom, at that point he's not monitoring and protecting people. He is taking a break from his duties as a police officer, but in this case he was monitoring the crowd. He said he was there to protect the kids in a gang-infested area from harassment, and he was there to protect the teachers as well. So if he's moonlighting, sitting at a desk, and someone walks in and punches him, then they have just punched him in the performance of his official duties? You said if he was sitting at a desk? And moonlighting. No. I mean, he was not engaged in his official duties. I'm sorry, go ahead. Just as Nick was asking, so I'm going to let her continue. No, no, no, no. I think we're saying the same thing. He's sitting at the – I mean, where's the limitation? Because he's really protecting the peace for the school district. That's who he's working for. That's why he's doing it at this moment. That's where the paycheck is coming from. The school says we want peace. We want our students to get home safe. Right? Right. That is right. But it doesn't matter where he is, who is being paid. He voluntarily put his police hat back on to protect and serve. He's a police officer, so he was going to confront the situation. He wasn't going to turn his back and run away. If he had been sitting at a desk and he was filling out, I don't know, looking at his phone, I don't know what in that scenario he would be doing at his desk, but then, no, he would not be engaged in official duties because he was not protecting people and preserving the peace. See, that's where I really have some concern. First of all, I'm going to come back to Justice Griffith's question. The jury has decided this case. The evidence that was there was presented before the jury. I understand that, and I get that in this case. But I would never agree to a bright-line rule that a police officer is always in the performance of his or her official duty. And by no means are the people asking you to do that at all. But that seems to be the implication here. And I have some concern, and I'm trying to figure out how do we resolve this. So there's – well, actually, I'd like also to talk about Brewer, because there's two different ways I'd like to distinguish when a police officer is engaging in official duty and when he's not. The first example, when he is monitoring – I'm sorry, maintaining the peace and protecting people, if he's doing something to that end, and to that end only, is he also wearing two hats, as a security guard and as a police officer. If he is moonlighting as a security officer and isn't doing anything, if he's alone by himself in a room – I mean, there has to be testimony that he was doing something to protect people, because that is the oath he took, and there was testimony of that. As for Brewer, which is the second point I'd like to make, because not only was he engaged in the performance of official duties when he was protecting the teachers, but when defendants aggressively approached him and the school and swore at him, he was then a threat to not only Officer Williams and to those at the school. So then Officer Williams was triggered into a more overt law enforcement mode. He sprung into action, and when the law was about to be broken, he was acting to deter the direct threat of the crime. And this is exactly what people who Brewer dealt with last week. It tells us that when Officer Williams was engaged in official duties, he had a duty to prevent the commission of a crime. Brewer, which also relied on Bayer, Joel, Al, and Banks, which people did in our brief as well, will have been an officer who is not on the clock, but who is wearing his police shirt and was shot and killed by the defendant, was engaged in his official duties because defendant's actions towards him triggered his duty. The court stated that any action taken by an officer toward the end of preventing the commission of a crime in his presence falls within the performance of his official duties. So not only was Officer Williams engaged in official duties when he was maintaining the peace and protecting these children, but he also, when the defendant approached him, he was then triggered into a more explicit duty of protecting himself and other people. Just like in Brewer, defendant's actions toward the officer were the potential commission of a crime, which Officer Williams had a duty to prevent. The court stated it agreed with the base court's conclusion that a police officer has a duty to prevent the commission of a crime and to defend all lives, including his own. Thus, the trial court, as a fact finder, could find that any action taken by the officer to prevent the commission of a crime, including a crime committed against himself, was in performance of his official duties. Obviously, Brewer was factually different. This is about a police officer getting shot. But the same principle applies. The defendant was aggressively approaching him. At that point, the officer had to act to prevent the commission of a crime, whether it be against him or about all the teachers and children that surround him. We expect our police to protect us, so we have to ensure that they are protected. They take an oath. If the mayor faced with a potential commission of a crime, they people can turn around. They don't. They are the ones who are confronting the crime to try to prevent it, so they have to have some protection against being assaulted and battered. We must not forget that the final standard is the standard. The rational trial, in fact, the jury could have found and did find that he was engaged in his official duties. As Justice Griffin pointed out, the lesser-included offense was included in the jury instructions. This jury could have found simple battering occurred, but they heard the testimony of what his official duty was, that he was protecting these children, and the defendant looked like he was approaching him so aggressively. Because Officer Williams was both performing his official duties when he was patrolling and because he was preventing the commission of a potential crime when the defendant approached him, his conviction should be upheld. Thank you. Thank you. If I may briefly, just as an initial matter, the state argues that the police officers are engaged in protecting and serving and that if a police officer is engaged in protecting and serving, that that is engaged in their official duties. And as Justice Walker pointed out, I just think that that is far too broad of a standard because protect and serve has no clear boundaries. It doesn't put the average individual or the defendant in this case on notice as to what type of crime is there or what type of activity would be considered criminal. And it just lacks a meaningful limitation. And, again, I think that you have to have more clear evidence submitted to the jury about what the duties are and how the particular conduct that the officer was engaged in at that time has a nexus with what those duties were. So, for example, if the officer says, I was on duty, I was patrolling, et cetera, and provides substantial evidence about way more than what we have here but provides substantial evidence about what their generalized duties were, they then have to provide a link between that and the actual acts that they were engaged in at the time they were battered. To make sure, for example, if the officer says, I was on a shift from 8 to 12, I was patrolling the neighborhood between here and there, I was executing warrants, et cetera, you then have to know that not only that that broad outline of their official duties, but let's say they were then taking a break, going to a coffee shop, something of that nature, and that is when they were battered, then that's no longer in their official duties. So you have to have information as well about what they're doing at the precise moment that they, not the precise moment, but in the course of when they were battered. As for Brewer, which the State discussed recently here and was decided recently, I think, again, as I acknowledge, it's factually distinguishable, but I also think that the legal framework that the Court relies on, and that is a controlling case because that is from the First District, the framework that is imposed is perfectly applicable here. They focus on the actions of the police officer at the time he's battered, and they say that defendant's actions, this is paragraph 42, toward the officer were the commission of a crime which the officer had a duty to prevent. The State, in opposing counsel's argument here, makes much of the fact that when Mr. Turner approached off-duty officer Wilson, that he was perhaps, I think the phrase was, a potential commission of a crime. And I think that overstates the evidence. The evidence here shows that there was a verbal discussion initially. There may have been mixed evidence regarding the tenor of that. The officer himself admitted on cross-examination that he may have overstated it initially. He was also impeached with his testimony from a preliminary hearing where he said that he was not belligerent when he approached him, that it was merely a discussion about what was going on. But wasn't all of that an issue for the jury? That's a factual issue. But again, it's our argument that you have to know what the State has to prove beyond a reasonable doubt, what the official duties are, and that the person is engaged in them at the time that they were battered. And simply talking to a person outside of a school, that can't be part of the official duties of a police officer. And even the way that the officer testified himself describing the conversation, he said, if I recall correctly. I don't know if it can't be because I think in this case the jury found beyond a reasonable doubt that he was performing his official duties. I think the jury found beyond a reasonable doubt that the officer was. In the performance of his official duties. And I think it's our position that the jury was misguided in that and that they misunderstood the standard and that the evidence in fact, even with the deference due to that fact finder, that is properly due here on appeal, even with the deference due to that fact finder, it's not enough. That the jury and the fact finder made assumptions about what was required to prove the official duties. And they conflated being a police officer with being a police officer engaged in the performance of their official duties. And here, using the, giving all due deference, but using the proper review standard that is applicable on appeal, that this court can look at that evidence and even with that deference can see that this, the evidence that the state provided was insufficient to prove my client guilty of aggravated battering of a peace officer because the state failed to prove, as they should be required to, that Officer Williams was in the performance of his official duties at the time that he was battered. And moreover, as we discussed previously, that they also failed to prove, whether through circumstantial evidence or otherwise, that my client knew that that officer was in the performance of his official duties. There's no further. And it seems as though the jury, because they found him guilty, they relied upon the testimony that whether it was a shot from the crowd or whether it was an officer saying, I'm the police, that then that was evidence that the defendant knew that he was performing his official duties. Apparently the jury found this. That is the possible inference one could make. Again, it's our position that even in the light most valuable to the state, it's our position the jury erred and the trial court below erred and that the standard, there should be a higher quantum of evidence required to prove an individual. But the trial court didn't err. The trial court gave the proper instruction. Well, then, in fairly terms, a motion for a new trial would be, or to grant a motion for a new trial. So this was an issue that was raised about 20 times. But more importantly, yes, the finder of fact, because, again, insufficient evidence to prove our client guilty beyond a reasonable doubt. Excuse me. If there's no further questions. Thank you, counsel. Thank you very much. Thank you, both of you. Very well done. Yeah, good job. All right. We will take it under advisory. People will hear from us shortly. And I think we are adjourned, yes? Thank you.